Good morning, Your Honors. May it please the Court, Counsel. Your Honors, I'm here on behalf of Tyrone Davis, who is serving an unlawful 18-year sentence in a Federal prison. This case involves a number of challenges to the unlawful sentence that were raised in the opening briefs, but there are really three primary arguments, any one of which would require a reversal in this matter. The first matter that I would like to address has to do with the improperly calculated criminal history category. As you know from the briefing in this case, Mr. Davis was given three criminal history points for minor charges from his past that exceeded the 10-year time frame by which they could be counted under the guidelines. So why isn't that issue waived? He didn't object to the PSR calculation and, more sort of importantly, affirmatively embraced criminal history category 2 in his sentencing memorandum. That is correct, Your Honor. Yet this Court must still review that error and determine whether it impacts Mr. Davis's substantial rights, and clearly it does. The government has cited a number of cases regarding waiver and failure to object, and yet those do not appreciate the new sentencing structures. And I think the Armstead case makes clear that even matters that have not been objected to, when they significantly affect an individual's rights at sentencing, the court must review it. And in this case, the difference in those calculations was that there was a number of cases which say that if it's an objection is waived, it's waived. I mean, that's the end of it, as contrasted with forfeited. So that's why I went to emphasize particularly the affirmative embracing of the – of that category in the sentencing memorandum. Well, I think the Court needs to also look, Your Honor, at the fact that Mr. Davis's attorney did object to the overall sentence and looked at the criminal history as perhaps being over-representative. He argues that Mr. Davis has only served 55 days in custody. We're now asking to put him away for 18 years. And that the overall sentence was being challenged, the length of time was being challenged. In the post-Carty era, in the post-Booker, Kimbrough, Gall era, this Court has to ensure that sentencing guidelines are properly calculated. And even, for example, in the Hernandez-Ramirez case where there's a waiver, the Court does look precisely at the issue and says, well, those points were properly added. Who knows whether the Court may have made a different decision if there had been a plain error on the record that would have indeed significantly impacted. In this case, those points would have reduced, made a reduced guideline range of 16 to 31 months. That's a significant period of time. That does, in fact, impact Mr. Davis's substantial rights. And this Court cannot turn the other way and ignore that error. That is considered a procedural error. Every court has since Booker that has considered this has said if a procedural error is there, it must be remanded because this Court can no longer do the reasonableness review as required. The Court's the Government has also pointed out that this shouldn't be a problem because of the relevant conduct. And this falls into the second issue of improper sentencing in this case, which was the fact that Mr. Davis would, in fact, be entitled to a retroactive amendment of his sentence under the crack cocaine amendments. And Mr. Davis's attorney raised this vigorously in the district court. The district court rejected it. We now know that that is something the courts should and must consider and that he would be entitled to go back. That is a basis for his sentence to now be considered unreasonable. The Government suggests that his piece to be considered relevant conduct should override that because it's there was additional drugs, and yet that is clearly in contrast with what they stipulated to in their plea agreement, with what they argued and admitted in the district court, and would not override that. In fact, numerous individuals in these cases, in this particular case, have received a reduction for this very issue. And that now throws into play how does the disparity come in to consideration. When you have the district court here give any reason why he wasn't going to consider the crack cane issue? The district court here indicated that he heard, I believe he considered the party's arguments because he read the information that was submitted. It was prior to these decisions and the amendment taking place, certainly, so it would have required him to be a little bit ahead of the game there. But what the court indicated was its focus was on the severity of the crime. And certainly, this was a serious crime, and Mr. Davis has – is not here to ask the court to be set free. What he is here to ask is that his sentence be considered fair and reasonable with regard to what his advisory range is. And when we look at what the proper calculation should be today, it is more than 50 percent of the guideline range that the district court was looking at. There's no way that anyone could suggest that the court might not reconsider an 18-year sentence of imprisonment if it knew that the guidelines properly should have been reduced significantly. We look at the – Can I ask, coming back to your first point, what is the factual predicate for the idea that the three priors don't count? All three of the priors were committed more than 10 years under the – that – of the initiation of this offense. Is that – where's the factual finding as to when the conspiracy started? The factual issue there would be that the government admitted in its opening brief – or in its appellant's reply brief at page 20 and also in the sentencing hearing and at the plea agreement at ER 22 and 83 all indicated that Mr. Davis's involvement in this conspiracy did not begin until late 2003. Those crimes went back to 1991 and 1992, well over the 10 years. In addition, the reckless driving charge is simply not an offense that should have counted. Thank you. Just very briefly, in addition, we believe that the leadership role, while we understand there are factual issues and the district court does have broad discretion in that situation, that this Court's recent decisions do require that there be some evidence that a person controlled or supervised or managed others, and that simply wasn't in the record. Unless you have further questions, I'd like to reserve my remaining time for a little. Surely. Thank you. Thank you. Mr. Lang. Good morning, and may it please the Court. My name is Mike Lang. I'm an assistant United States attorney. I also handled this case on the – with the Court below. I would like to begin with a little backdrop on the case. This case was initially negotiated as an 11C1C plea agreement, whereby the parties, both Mr. Davis and the government, agreed that a benefit to Mr. Davis for negotiating this case would be an 18-year sentence. Mr. Davis fired the attorney who negotiated that plea, and the new attorney was allowed by the government's permission to argue for something even less than what was negotiated in the 11C1C agreement. Mr. Davis has not – did not then and has not now sought to withdraw from that plea agreement, claiming it's unfair, nor does he claim that the plea agreement in any way was unfair. I raise these issues to try to point out that the proceedings overall were intended to provide a sense of fairness to Mr. Davis. And the questions now before the Court are, did the Court – before this Court are, did the district court correctly calculate the guidelines, number one? And number two, was the sentence fair and reasonable? I will address briefly each of the issues raised by counsel. First of all, the criminal history category. As this Court has correctly noted, that issue was not objected to in the Court below and should therefore be reviewed for plain error. In terms of whether or not that was plainly erroneous, I would ask the Court to consider whether or not it had an extremely disproportionate effect on the sentence. That's one of the ways this Court has looked at waivers of arguments below. In the Armstead case, the case said – Before you jump to that, would you agree that the – he didn't join the conspiracy until 2003? I do not agree with that, Your Honor. And in fact, in the – I attempted to address that in our brief. I'm not – I thought you tried to take it back. But, I mean, it wasn't – didn't he – he did not get in until 2003, did he? What – what the plea agreement language said was – and if I can just have a moment – from at least the fall of 2003 until his arrest in July 2004. And then later in the plea agreement – this is the language that the parties agreed to in the squares of the plea agreement. Prior to his arrest on July 2004, Davis bought and sold cocaine. There was no beginning date mentioned anywhere in the plea agreement. I guess the only date we have is the 2003 date. There's no other date. Is that right? You're correct, Your Honor. There are no other dates actually set forth whereby we say this is when it began, except for the pre-sentence report. And in the pre-sentence report, the pre-sentence writer clearly says, this conspiracy, the Seven Deuce Mob, was created in 1998. It also notes that Tyrone Davis was there at the beginning. It also notes that this Seven Deuce Mob group, or gang, whatever you prefer to call it, was involved in selling cocaine since its inception in 1998. Now, when they say that Davis was there, what actually do they say in the pre-sentence report? I was trying to think of a decent analogy. And I don't know if I can think of one. But I compare it somewhat to the Founding Fathers of our country, the signers of the Declaration of Independence being the Founding Fathers, and then people who are citizens, people who happen to be there at the founding. So now our whole beginning of the Republic is one big conspiracy. I'm not trying to suggest that, Your Honor. The Mr. Davis was not one of the Founding Fathers. We're not suggesting that. He was not somebody who was there at the beginning. But he, excuse me, was there giving instructions to people at the beginning. Rather, he was there at the beginning. He was involved at the beginning and was involved since its inception. When you say involved, what do you mean? What's specific? Well, as the pre-sentence report indicates, the members of the conspiracy were involved in distributing cocaine. It does not specifically say that Mr. Davis sold cocaine in 1998, sold it in 1999. Rather, it's a general description of the conspiracy. And I would ask that this Court, I think one reasonable inference that can be drawn from that is that Mr. Davis was involved by participating in the conspiracy, knowing of its objects, and furthering it by assisting others. What would be the level of proof that the government would have to have to say that he was part of the conspiracy, a member of the conspiracy before 2003? I think for any factual finding the Court to make, the government would have to prove it by a preponderance. I believe that that would be the appropriate standard at any point. What's the evidence of his being there? The pre-sentence report says he was there. Yes, Your Honor. And that is what we have. And that is, I would submit to this Court, it was not objected to in the Court below. The Court accepted, adopted the findings in there, and I think that that would be an appropriate standard for this Court to accept. Regardless, though, when looking at the plain error standard and asking whether or not it had an extremely disproportionate effect on sentencing or prejudiced the defendant, what I would notice, even if the defendant's criminal history category was erased, even if it was a criminal history category of one, if we accept everything, that only reduces, by my calculation, Mr. Davis's guideline range would be 210 to 262 months, or 17 1⁄2 to 21.8 years. He was sentenced right in the middle of that guideline range. So there was no substantial prejudice to Mr. Davis, and there was no extremely disproportionate effect on his sentencing. Under a plain error review, which I think is the appropriate standard here, he was not prejudiced. What about the crack cocaine issue? That seems to be kind of critical in this case. I was going to address that in the third argument, the reasonableness of the overall sentence, but I'll address it now, Your Honor. I think what Judge Layton attempted to do in this case was to place Mr. Davis in the appropriate position, both relative to the co-defendants, but also in terms of the impact the judge viewed this crime to have on society. And the court actually mentioned, as Ms. Toland correctly noted, that this issue was raised to the district court. There was a New York case, Simon, presented to the district court. The district court said, I read that. I also read an article about black African-American youths and the disproportionate effect the guidelines have. And the court said, I understand that, and I accept it, telling me that Judge Layton did consider the disparity argument. And then he went on, and he said, I deal with minority scholarships for youths, for minority youths. And frankly, we compete with the gangs. And in my view, the only way to address this, to address the impact that gangs have on society, is to sentence their leaders to stern sentences. So the court was saying, even taking into account the disparity argument, I still think that this 18-year sentence is appropriate. But he sort of picked up on that through the leader enhancement, didn't he? So it strikes me there's a little bit of double counting in that, to say, we want to make an example of the people who lead. Well, he got nailed for being a leader, an organizer. And then before, and obviously, I mean, this was all before Spears and the other changes in the disparity. Disparity has been out there. Let me just ask you this way, then. If we were to disagree with you, and say that the criminal history needed to be refactored, would it be appropriate to ask the district court to take another look at the disparity issue? I believe that it would, Your Honor, yes. But I would respectfully suggest that the court didn't just consider the leadership role, as this court is viewing it. Rather, what the court said is, and clearly stated, even if he is not found to be a leader, even if he's not a leader or organizer, I still think 18 years is fair. And here's why. Because this was a serious offense, and because of Mr. Davis's role in that offense. What I would note, and what I think that Judge Layton may have been trying to do, although not explicitly saying it, is I looked through the guidelines again. Looked at Application Note 2 to the Leadership Organizer Guideline. And what it says is, an upward departure may be warranted for those who did not organize, lead, manage, or supervise, yet who nevertheless exercised management responsibility over the property, assets, activities of the organization. I think what Judge Layton was trying to get at was what that application note says. Even if it's technically, even if Mr. Davis technically, legally does not meet the definition of a leader, his role in this group and this group's impact on Tacoma society is significant. And I want to make a statement about that. I want to address the nature and the circumstances of the offense, a 3553 factor. I want to address the history and the characteristics of this defendant, Mr. Davis, and his role in the offense. I want to show that this offense is serious, that I want to promote respect for the law and provide just punishment and afford adequate deterrence. So all of those things, although not explicitly stated, I think can be reasonably inferred and go to the reasonableness of the overall sentence. He asked this. What did he say about leadership? It seemed to me that that was pretty sparse. What the judge said was that I'm relying on the entire record in this case, the prior hearings that I've had. And what he said was, Mr. Davis was right up there with Titus Bride. His house was the hub of the wheel of this conspiracy. And I think this might go back to the nature of the plea agreement. We didn't pin the court down sufficiently, but I think the record he had based in the pre-sentence report and before him was sufficient for him to make those findings. My time is up, Your Honor. Unless there are additional questions, I will cease. Thank you. Thank you, Mr. Owen. Thank you. I just want to briefly address a few issues in response to the United States arguments. First of all, the court did rely on some of the issues in the pre-sentence report. And at SSM 7, which are the supplemental sentencing materials, the sentence reporter specifically says the very first involvement of Mr. Davis in this drug conspiracy was in October of 2003. There simply is no question that this conspiracy, Mr. Davis' involvement and what can be he can be held accountable for under 1B1.4 was outside of the 10 years of those prior offenses, and they simply cannot count. The government would suggest that 16 to 31 months is insignificant. This Court disagrees. It disagreed in Armstead. A five-month failure to calculate credit for time served was considered a significant procedural error. I certainly think 16 to 31 well fits in that. Significantly, the government concedes that if this criminal history category is incorrect, the matter should return to the district court. And while they would like to suggest that the court considered this to be a fair sentence of 18 years, I don't think we can assume that if Judge Layton knew that what he thought of a guideline range was 235 to 293 months was actually correctly calculated to be 108 to 135, none of us can assume that that would be the case. That really would have meant he felt an 18-year sentence was appropriate or fair. And in that situation, the reversal should be – it should be without question given the serious problems with this case. It is rare that we have three opportunities for a reversal. In this case, there are three because that criminal history was wrong. The retroactive crack amendments apply. He's entitled to go back on a 3582 motion, and we may as well send it back now for him to deal with that along with these other errors. And the leadership role was a problem. Four levels. As you correctly point out, Your Honor, that enhancement is significant and raises the bar dramatically for somebody who is now being made an example of with an overall 18-year sentence. And you cannot simply say, well, he was involved in a lot. The government's point of citing the Potts case makes that abundantly clear. That was a Medellin cartel case where there were millions of dollars and the largest cocaine bust in the United States, and the brother in that case, which is similar to Mr. Davis, who is the brother of the leader in this case, no leadership role, despite significant involvement, no evidence that he controlled, supervised, manipulated others. We don't have that here. It should not have applied. Your Honors, I respectfully ask that you send this case back to the district court. I believe that Judge Layton did do his best in this case, but here we have clear errors that need to be addressed. He needs to look at this anew in light of the changed guidelines, in light of the correct criminal history. And I think we'll see a very different picture when that is accompanied by the serious mitigating evidence given Mr. Davis' difficult past and his intentions of proceeding and living a productive life. There is no need for him to sit in prison until he's 50 years old. Thank you. Sotomayor, I would address Judge Rimer's point that there's a difference between forfeiture and waiver. What do we have here, forfeiture or waiver? Your Honor, I'm not sure I understand exactly the question. I think that Mr. Davis in this case did not make a clear objection to the criminal history category, and it is correct that his attorney adopted that. However, this Court still has to look at whether that error from the record is plain, because it does affect the substantial rights. And I think that Cardi requires that now for this Court to do so. And so the fact that it was not objected to, while it raises a different standard and it now must be a plain error, that the error is plain. The fact that the attorneys at down below and the judge didn't recognize this error in the guideline calculation doesn't mean it was not plain. It is plain and it requires reversal. Thank you. Thank you, counsel. Both of you. The matter just argued will be submitted in the next year argument in Bastion.
judges: Fletcher, Rymer, Fisher